ISAAC C. HARRIS, plaintiff in error, *vs.* LITTLEBERRY HINES, defendant in error.

The dismissal of a bill in equity carries the whole case out of court, including the answer of defendant thereto, if said answer contain no set-off or other prayer for relief in the nature of a cross-bill; and the defendant cannot, five years after the dismissal of the bill, be made a party thereto, and then file a cross-bill, or answer in the nature of

a cross-bill, against complainant. It does not alter the case that the original bill was served on defendant's agent acting under a power of attorney from him, he being a non-resident, and that the agent answered the original bill for defendant, and has since died. The new answer, in the nature of a cross-bill, cannot be engrafted upon the old answer, which contained no set-off or other prayer for relief, but only a prayer to be dismissed with costs.

Equity.   Practice in the Superior Court.   Before Judge CLARK.   Lee Superior Court.   March Term, 1877.

It is to be inferred from the record that a bill for injunction had been filed by Harris against one McLeod and Richardson as agent of Hines, a Texan ; the bill itself is not in the record.   On March 25, 1867, Richardson filed an answer alleging, in brief. as follows : In 1859, he, as agent, sold to McLeod the land involved in this controversy ; he took notes for the purchase money, and gave bond for titles.   The notes were never paid ; McLeod was unable to pay them ; the parties agreed to rescind the trade ; it was done ; the papers were surrendered.   Defendant denies all privity in, or consent to, the trade between McLeod and Harris, or knowledge thereof, except from rumor.   McLeod having put some improvements on the place, defendant allowed him to tarry awhile as a tenant at will, that he might not lose all benefit of his handiwork.   He sold the land, and Harris bought with notice.   Under the agreement mentioned, McLeod returned the premises to defendant, who placed his son and another in possession.   In the absence of the agents, Harris seized the place and became master of the situation   He has since retained it.   He is insolvent. After these allegations, defendant contented himself with a single prayer—to be dismissed with his costs, in the usual form.   It seems to be understood in the record that the bill was dismissed about 1870—no dismissal appears, but it is treated as having taken place.

In 1874, an order was granted making Hines a party defendant in place of Richardson, and time granted him to amend the answer.   In 1875, he did so, alleging, besides the

facts above stated, that, in the progress of the litigation, complainant had been compelled to give to Richardson two bonds for the payment of rent, amounting to $1,500.00; that he was insolvent, but the bonds were good; that he had wrongfully held the place since 1867, of the annual value of $1,000.00.   The answer was in the nature of a cross-bill, and prayed that the bonds given by complainant might be used for this defendant's protection; that the place be decreed to him, and an account and settlement be had for rent.

The jury found for Hines the premises in dispute and $2,075.70 *mesne* profits.   Harris moved for a new trial; the motion was overruled, and he excepted.

For the other facts see the opinion.

W. A. Hawkins, for plaintiff in error.

G. W. Warwick; Fred H. West, for defendant.

Jackson, Judge.

Harris filed a bill against McLeod and Richardson, as agent for Hines, who resided in Texas, to quiet the possession of a certain tract of land Harris bought of McLeod, and McLeod of Richardson, as agent, the title being in Hines.   This bill was brought to Lee superior court in 1867, and Richardson answered it, but set up no equitable set-off, and prayed for no relief at all in the answer; but the answer was simply and solely defensive to the bill, and the only prayer therein was the usual prayer to be dismissed with costs.   Afterwards Richardson died, and in 1874 Hines moved to be made a party to the bill, and to be allowed to answer in the nature of a cross-bill and to pray for relief. This motion was granted, and Hines obtained a decree for relief against Harris, turning him out of possession and recovering rents from him to a large amount.   The grounds upon which he was made a party, and was permitted to revive the dismissed bill, were to the effect that Richardson, his agent, was dead; that Harris was insolvent, and had given

bonds and security to secure the rents in the original bill, and that, without the aid of these securities, he, Hines, would be remediless—the land being badly worn, and Harris not able to respond for rents; all of which will more fully appear from the pleadings and facts reported.

Stripped of all surplusage, the question is made by the bill of exceptions, which brings the case here, can a bill which was dismissed by the complainant four or five years before, be revived by the defendant who answered the same, but in the answer set up no set-off or other aggressive equity, and prayed for no relief whatever but to be dismissed with costs—can such a bill be revived for the purpose of engrafting a cross-bill, or answer praying relief, upon an answer which was purely defensive, and prayed for nothing but to depart with costs?

The only prayer he made in the original answer, through his agent, he had granted him; that is, to be thence dismissed with his reasonable costs. He was thence dismissed with his reasonable costs; for when the complainant dismissed the bill, of course it was at complainant's own costs, and defendant had none to pay. It would be strange if a party could successfully complain of his own prayer in his own pleadings being granted by the court. He got what he asked, and must not complain that he did not ask aright.

The Code—section 4130—declares that "a complainant may dismiss his bill at any time, either in term or vacation, so that he does not thereby prejudice any right of the defendant. If equitable claims, by way of set-off or otherwise, have been set up by the answer, the dismissal of the bill shall not interfere with the defendant's right to a hearing and trial on such claims in that proceeding." But in this case *no right* of defendant was prejudiced; he got all he asked for; and *no equitable claim, either of set-off or otherwise, was set up in the answer.* Therefore, the complainant had leearly the right to dismiss the bill, and such dismissal carried with it the whole proceedings—all the case—plea, answer, and everything else.

It cannot alter the principle that the defendant's agent in Georgia was sued in the original bill, and that he made the defective, or merely defensive, answer thereto. The only way that this defendant could possibly come in as a defendant at all, must be through this agent. If he was not sued in the person of his agent, he had no right to be made a *defendant* to the bill; if he was sued in the person of the agent, he is, of course, bound by the answer the agent made, and the answer to the prayer he invoked.

Nor can it make any difference that the agent died after the bill was dismissed.

But the defendant in error invokes the aid of section 4177 of the Code. That section declares that "no mere formality, or omission of a formality, shall vitiate or delay a proceeding in equity, but the same liberality as to amendment shall be allowed therein as in a proceeding at law." But the trouble here is, that there was nothing *in court* to amend by. The case was dead. The attempt was to engraft a live branch on a dead tree. The case was out of court; the answer of the agent was out of court, and when the new answer was engrafted on the old one, it was fastened to a thing out of court. It is no formality, or omission of a formality, but goes to the root and heart of all judicial proceedings in equity; for if, at the end of four or five years, a person interested can be made a party to a dismissed bill, and revive it for that purpose, under the facts disclosed in this record, and renew litigation thereon, he may do so in any case where he can bring in new equities and new prayers, which demand equitable relief, and no case would end.

We do not say what Hines may or may not do on an original bill of his own. We merely rule that he has no standing at all in court on a cross-bill tied on to this dismissed bill.

As this is vital to the case this record makes, it is unnecessary to look further.

Judgment reversed.