EVANS, administrator, *vs.* SHELDON *et al.*

1. As a general rule a complainant has the right to dismiss his bill at any stage of the case, provided he does not thereby prejudice the rights of the defendant; and a dismissal of the bill carries with it the entire case, including the answer. But where the defendant has set up in his answer equitable claims by way of set-off or otherwise, the dismissal of the bill does not interfere with the defendant's right to a hearing or trial of such claims. The complainant may still dismiss his bill, but he cannot prejudice the rights of defendant by carrying with the bill so much of the answer as is in the nature of a cross-bill praying for affirmative relief against complainant.

(*a.*) In the present case, the only right set up by the defendants concerning which relief was prayed by them, was as to certain arrears of rent claimed to be due by complainant to them, and the right to try this issue could not be prejudiced by the dismissal of the bill; but the right of dismissal included all other issues which were made by the bill and those portions of the answer which were merely defensive.

2. After complainant had moved to dismiss his bill, it was error for the court to submit to the jury issues arising under it and portions of the answer which were purely defensive.

(*a.*) Especially was this the case where the court having held that the failure of complainant to show a demand made upon defendants prior to bringing the case would necessitate a verdict for the defendants, and the complainant having thereupon moved to dismiss his bill, the court nevertheless submitted to the jury issues involved therein.

3. A verdict and decree against the complainant on the issues thus improperly submitted were illegal.

4. A difference between parties was submitted to arbitrators for the purpose of settling two questions: first, at what rate of ground rent certain leases of two lots should have been renewed at their

expiration, and second, what amount of ground rent should be paid up to the day of the award. The award was that the leases should have been renewed at the rate of two hundred dollars per annum; that on a specified day the complainant would " owe for ground rent of that portion of lots 51 and 52 in his possession and enjoyed by said estate the sum of eleven hundred and sixty dollars, as will more fully appear by reference to a statement hereto appended"; that until he should be put into complete and full possession and enjoyment of the whole of the lots, an abatement of forty dollars per annum should be allowed upon the yearly rental found:

*Held*, that such award was too uncertain and conditional to be valid, and was properly set aside by the court.

(*a*.) Arbitration is a matter of consent, and when an award is set aside for uncertainty, the court cannot force a party to agree to a settlement of the matter in controversy, nor has he the power, on motion of one of the parties, and over the objections of the other, to recommit the case to the arbitrators.

February 6, 1883.

Equity. Practice in Superior Court. Arbitration and Award. Before Judge TOMPKINS. Chatham Superior Court. June Term, 1882.

George P. Evans, as administrator of the estate of Isabella Evans, filed his bill against Louisa C. Sheldon *et al.*, aud the said Louisa C. having died pending the suit, her husband, J. R. Sheldon, individually and as guardian for his minor child, Emma P. Sheldon, was made a party defendant. The bill, in substance, alleged as follows: Isabella Evans at the time of her death was seized and possessed of four houses on lots Nos. 51 and 52, Walton Ward, in the city of Savannah. On December 19th, 1850, one Hiram Roberts, since deceased, who was the owner of the land on which these four houses were afterwards erected, executed to one B. R. Armstrong, a lease of said lots for the term of twenty-one years, at an annual rent of twenty-four dollars for each lot. During the term Isabella Evans became the purchaser of the four houses, and also of the lease of the lots, and continued to pay the rent up to the expiration of the lease, December 19th,

1871. The lease was in writing, and it was expressly stip-
ulated that at the expiration of the term the value of the
annual rental of the lots should be fixed by three free-
holders, one chosen by the owner of the land, another by
the owner of the lease and houses on the land, and the
third by the two so chosen; and it was expressly made
obligatory on both parties to renew said lease for a term
of twenty-one years, to commence from the termination
of the former lease, at the yearly rent to be fixed by the
three freeholders selected as aforesaid, according to their
judgment of the valuation of the lots. At the expiration
of said lease, Roberts, who represented himself as still
the owner of the lots, failed to have the estimate made
and the lease renewed according to the terms thereof,
though the said Isabella Evans was anxious and willing
to abide by such terms, and up to the time of her death, on
June 22d, 1874, no renewal of the lease had been made
to her. After the expiration of the term and the death
of said Isabella, her son, John J. Evans, paid to Roberts,
who still professed to be the owner of the lots, five hun-
dred dollars on account of the rent of said lots, which he
accepted without any reference to a stipulated price. Soon
after complainant became administrator (he having been
appointed by the ordinary of Chatham county, January
8th, 1876), he discovered that no new lease of the lots had
been made to his intestate, and he immediately applied
to Roberts, supposing that he had a right to renew said
lease according to its terms, and endeavored to obtain a
renewal, but Roberts evaded the question, put him off on
various pretexts, and failed and refused to renew said
lease. Roberts led him to believe he still owned the lots
up to the time of his death, which occurred on the——
day of——, 1880; and it was not until after his death that
complainant ascertained that on October 3d, 1871, the
lots had been purchased by one Francis S. Lathrop, of
the state of New York. Although Roberts was well
aware of this purchase he concealed the fact from Isabella

Evans and complainant, and induced them to believe up to the time of the expiration of the lease, and for a long time afterwards, that he was still the owner of the lots. Complainant has very recently learned that, on the —— day of February, 1881, Lathrop had made a conveyance of the lots to Louisa C. Sheldon, James H. Roberts, Margaret K. Burroughs, Ada Roberts, Kate R. Brown, Bessie Roberts, Emma R. Walthour, and Henry Hull, all of Chatham county. As soon as he learned of this fact, he applied to these parties and endeavored to get a renewal of said lease, but on various pretences they all failed, neglected and refused to renew it. He is and has always been willing to pay any just and fair amount of rent shown to be due, if any, upon investigation. Recently a partition of all the lots conveyed to defendants by said Lathrop has been made, and lots 51 and 52, Walton Ward, were drawn by and allotted to Louisa C. Sheldon. He applied to her for a renewal of the lease, but she refused, insisting that all back rents due must first be paid upon terms to be proposed by herself and the other defendants. It is the duty of complainant as administrator, to settle and distribute the estate of said Isabella Evans, and to sell the four houses, which are worth one thousand dollars each. He obtained an order from the ordinary to sell, and hoping to obtain a renewal of the lease, advertised the property for sale, but that no one will purchase unless complainant can transfer to the purchaser a lease of the land occupied by them. The houses are built of brick, and cannot be removed, and are wholly lost to the estate, and the heirs and distributees thereof, unless complainant can obtain a renewal of the lease of the lots. It was covenanted and understood before the houses were built that the lease should be renewed according to the terms thereof; and the houses are of no value unless the owner enjoys a lease of the land on which they stand.

Defendants are the children of said Hiram Roberts,

and while said Francis S. Lathrop held the title to the lots, some of them offered to arrange and settle the matter, when they well knew they had no right to do so; and since the conveyance to them by Lathrop, they make constant demands for back rent, although they refuse to renew the lease; and, since partition, all of them, save said Louisa C. Sheldon, say they have no interest in the property, and cannot make a lease. Since said partition, complainant applied to Louisa C. Sheldon and endeavored to get her to make a lease, but she refused. Defendants know that complainant cannot sell the houses without a lease, and they hoped, and, since the partition said Louisa C. hopes, that by refusing to renew the lease, they will be able to buy the houses for a nominal price. Complainant is, and always has been, ready and willing to come to a fair and honest settlement of all differences between defendants and himself, and only asks a renewal of the lease as stipulated for, that he may settle and distribute the estate. Defendants threaten to take some summary proceedings to eject complainant and his tenants, who are all restless and dissatisfied under the state of affairs. Complainant is apprehensive that they may endeavor to execute their threat, and has no means of preventing them from so doing, or of obtaining a renewal of the lease, except through the interposition of a court of equity, whose aid he invokes. The prayer was for injunction to restrain any proceedings against or disturbance of complainant or his tenants; that Louisa C. Sheldon may be decreed to make to complainant a good and sufficient lease of lots 51 and 52, Walton Ward, as was contemplated and agreed in the original lease, at such annual rent as shall be right, proper and just to all persons concerned; that defendants be required to come into court and sustain their claim for rent in arrear, if any they have, against the estate of Isabella Evans; that complainant have general relief.

By an amendment it was further alleged that an assignment of the lease of lot 51, made December 17th,

1859, Eugene G. Evans, and of the lease to lot number 52, made December 15th, 1862, to said Eugene G. Evans, were made for the benefit and advantage of said Isabella Evans, who was in possession and control up to the time of her death, and complainant as her administrator has been so since; that said Eugene G. never claimed any right to said property or the rents, and never had any possession or control thereof; that said assignments never opposed any obstacle to the renewal of the lease to said Isabella, or complainant, and that neither Roberts, nor any of defendants, ever alleged these assignments as an excuse for not renewing the lease. That Roberts, after the expiration of the lease, always treated the said Isabella as the real owner of the houses and leasehold interest, and received rent from her.

By a further amendment it was alleged that on December 19th, 1872, the said Francis S. Lathrop made to one Ann E. Morel a lease for twenty-one years for those portions of lots 51 and 52, Walton Ward, cut off by an alley way, which was contrary to the covenant of the original lease, and was done without the knowledge or consent of said Isabella Evans, or complainant; and that afterwards, on August 1st, 1873, the said Ann E. Morel assigned this to one William Lake. That Ann E. Morel and William Lake have paid the rent therefor to said Roberts during his life time, and since his death to defendants, the rent so received being a large sum; and that the cutting off of these portions from the lots detract greatly from their value as originally leased, December 19th, 1850.

Defendants' answer, alleged in substance, as follows: They believe it is true, as stated, that Isabella Evans at one time did own the four houses mentioned, and was the assignee of the lease, but they are informed that at her death in 1874 the house and all right to a lease growing out of the original lease was in John J. Evans, and is still. The lease expired December 19th, 1871, and contained a provision for renewal; and they say, upon informa-

tion and belief, that at the expiration of the lease it was referred to freeholders to determine what would be a fair rental for renewal, and they fixed the rent for lot 51 at one hundred and ten dollars, and for lot 52 at ninety-five dollars a year.   Isabella Evans and John J. Evans acquiesced in this and paid rent on that basis.   Isabella Evans, up to the time of her death, and John J. since.   He paid $100.00 on December 2d, 1874, $300.00 on January 8th, 1875, and $100.00 on February, 24, 1875.   No rent has since been paid, and the land has been occupied, and the income received by John J. and George P. Evans since the death of Isabella.   There is now due to defendants, as the annual rental upon the lots, the sum of thirteen hundred dollars, or thereabouts, besides interest thereon, which they pray may be decreed them against the complainant.   Defendants became the owners of said lots as tenants in common, and are entitled to all arrears of rent up to the time of the partition, and Louisa C. Sheldon since that time.   Hiram Roberts parted with the title to the lots to Francis S. Lathrop, but not to avoid a renewal of the lease, and he always retained authority to renew the lease upon the payment of the arrears of rent claimed to be due by defendants.   Defendants do not know the value of the four houses, and they deny that the lease was to be perpetual, as stated in complainant's bill.   If complainant insists upon a writing renewing the lease, he must assent to the annual rental so fixed as aforesaid and acquiesced in by his intestate, or else these shall now stop, and the complainant pay to these defendants the arrears of rent due them.   Defendants deny all combination and confederacy.   They also filed a general demurrer.

The case presented by the bill, answer, and amendments came on to be heard, and after the testimony had closed, and when one of the solicitors for complainant was about to address the jury in conclusion, a question was made as to whether or not complainant had proved any demand

upon any one for the renewal of the lease for the lots. The presiding judge then stated that the finding must be for defendants, because no proof was in showing any demand upon any person for a renewal of the lease since its expiration on December 19th, 1871. Complainant's solicitors admitted there was no proof of any demand for a renewal upon any one duly authorized to renew the lease; and in open court before the issue made as to the renewal was submitted to the jury, and before any finding or decree thereon, they announced that they dismissed complainant's bill. Defendants' solicitor objected to the dismissal. Complainant contended that no counter-claim was set up by defendants in their answer except the following: "And defendants showed that there is now due to them the annual rental upon said lots the sum of thirteen hundred dollars, or thereabouts, besides interest thereon, which defendants pray may be decreed to them against the complainant;" and they tendered an order to that effect to the judge, to be made a part of the record, which order the judge refused to allow, and refused to allow the bill to be dismissed.

The judge, thereupon, after the announcement in open court that the bill was dismissed, in addition to the issue as to the amount of back-rent due to defendants, raised by the counter claim in their answer, submitted to the jury the following question: "Is the complainant, as administrator of Isabella Evans, entitled to a renewal of the lease upon lots 51 and 52, Walton ward, under the terms and conditions of the lease executed by Hiram Roberts to B. R. Armstrong on 19th December, 1850?" And the jury, under the charge of the court, answered the question in the negative. Upon the issue as to the amount of back rent due raised by the counter-claim in defendants' answer, the jury found that the ground-rent unpaid since the expiration of the lease December 19th, 1871, amounted to $1,058.31; that there had been paid on account $590; that this paid the back rent due up to Octo-

ber 26, 1877, leaving a balance still due by complainant to defendants of $468.31. On July 28, 1882, a decree was signed by the judge, reciting the findings of the jury, and declaring that the lease was not renewable under its terms and conditions, and that defendants recover of complainant the sum of $468.31 and the costs.

Complainant excepted to the action of the judge in submitting to the jury the question whether or not complainant was entitled to a renewal of the lease under its terms and conditions after complainant had dismissed his bill in refusing to sign or allow the order presented to him as part of the record of the proceedings; in refusing to allow the dismissal of the bill; in making an entry to this effect on the back of the bill, and in allowing and entering the decree.

Defendants in error assigned error on certain rulings of the court *pendente lite*, which are sufficiently stated in the fourth division of the decision.

A. B. SMITH; GEORGE A. MERCER, for plaintiff in error.

LESTER & RAVENEL, for defendants.

JACKSON, Chief Justice.

This case was a bill in equity filed by the administrator of Mrs. Evans against Louisa C. Sheldon and others, to compel the renewal of leases of lots 51 and 52 in Walton Ward, Savannah, and to settle the account overdue on preceding leases of said lots, and fix that which should be paid annually on their renewal.

On the trial of the cause, pending argument before the jury, it appeared that complainant had proved no demand on defendants to renew the leases. Thereupon the court ruled that the verdict must be for defendants. Whereupon the complainant moved to dismiss his bill, which was not allowed, because the defendants had set up

in their answer in the nature of a cross-bill certain equities of their own, and the trial was ordered to proceed. On the trial the court submitted to the jury certain questions. First: Is complainant, as administrator of Isabella Evans, entitled to a renewal of the leases upon lots 51 and 52 Walton Ward, under the terms and conditions of the leases executed by Hiram Roberts to B. R. Armstrong, on 19th of December, 1850? Secondly: What amount has been paid as ground rent upon such portions of lots 51 and 52 as are occupied by complainant, Evans, since the expiration of the lease in 1871? Thirdly: What amonnt of money is now due for unpaid ground rent upon said two lots from the 19th December, 1871, up to this date? Fourthly: From what date is still due the ground rent now unpaid on said two lots? And fifthly: What amount should be paid by complainant to defendants, that is from the lessee to the owner, for ground rent now due upon these two lots?

Upon the answers to these questions, the court decreed that the leases were not renewable, and that the defendants recover from complainant $468.30 for rent due up to date of decree.

To the rulings of the court on the refusal to permit complainant to dismiss his bill, to the trial of the whole case, and to the propounding to the jury any question except as to arrearages of rent due, the complainant excepted, as also to the degree entered on the verdict, and assigns error here thereon.

1. There can be no doubt of the right of the complainant to dismiss his bill at any stage of the case, provided he did not thereby prejudice any equitable right of defendants. The general right to dismiss in all cases is conferred by the Act of 1843. Code §3447. All cases in any court, provided by this section, would of course embrace equity causes. But they are more particularly and specifically provided for in section 4190. That section provides that "a complainant may dismiss his bill at any

time, either in term or vacation, so that he does not thereby prejudice any right of the defendant.   If equitable claims by way of set off or otherwise have been set up by the answer, the dismissal of the bill shall not interfere with defendants rights to a hearing and trial on such claims in that proceeding."

We think it quite clear that this section means, construing it altogether, the rights of defendant which the complainant cannot prejudice by his dismissal of the bill are mainly those rights which are specified in the last clause of the section, to-wit : equitable claims by way of set off or otherwise, which the defendant has set up in his answer, and so the section has been construed.

In 58 *Ga.* 355 it was held that even where the complainant prayed for discovery and got it, and it did not suit him, he could dismiss his bill and bring another just like it, if the answer did not set up some ground of relief and pray for it, but was confined to defensive matters only. In that case I dissented, because it was inequitable in my opinion to permit the complainant thus to avoid the force of the discovery he had invoked; but this court went even to that extent.  So in 59 *Ga.* 427, it was held that the dismissal of a bill in equity carries the whole case out of court, including the answer of defendant thereto, if said answer contains no set-off or other prayer for equitable relief in the nature of a cross-bill.   The court there say, inasmuch as defendant "set up no set-off or other aggressive equity," when the bill was dismissed, everything— answer and all—went out with it.   So also in 61 *Ga.* 329, the very point was ruled that the complainant could at any time dismiss his bill, but not so as to carry the cross bill with it.

In accordance with what seems to us to be the true intent and meaning of section 4190 of the Code, and with the ruling of the court thereon, we hold that the complainant had the right to dismiss this bill, provided he did not thereby prejudice the defendant by carrying with

the bill so much of the answer of defendant as was in the nature of a cross-bill and prayed for affirmative relief against the complainant. On inspecting the answer, we find but one thing in it in the nature of a cross-bill, and that is the claim set up for arrears of rent, and the prayer that complainant be decreed to pay the amount due thereon. So that the bill was out of court, the equities therein stated and prayed for, the answer to those statements merely defensive, and all issues, except the single question of the amount of arrears of rent due. So much of the answer as bore on that issue, and so much of the evidence in the cause as shed light thereon remained for adjudication, but nothing else.

2. It follows from this that the questions propounded to the jury, other than those which bore on the issue of arrears of rent, were improperly submitted. Especially does this ruling apply to the first question in respect to the right of renewal of the leases to lots 51 and 52, in controversy. The court had determined that the failure of complainant to prove any demand for renewal necessitated a verdict for defendants. This forced complainant to dismiss his bill in order to procure proof of demand, or make it so as to prove it on a new bill; and yet the court submitted to the jury the very issue it had decided, that is, whether the complainant, under the lease and facts proved, was entitled to the renewal. We think this was error, because the complainant had the right to dismiss his bill, and thereby the trial of that issue, and because the trial of it was a foregone conclusion, already ruled as a question of law by the court.

3. It follows also, that the decree of the court on the verdict of the jury, as well as that verdict, are illegal, and must be set aside, because the case tried was *coram non judice*, except upon a single issue, which should have been tried alone. The verdict and decree must, therefore, be set aside, and the case be remanded for a new trial.

4. The reversal of the judgment, and the consequent

re-hearing of the whole case, renders it necessary to consider the questions made in the exceptions *pendente lite* filed by the defendants in error.

The cause had been referred by the parties to arbitrators, and the award of the arbitrators was returned.  Exceptions to the award were filed by the complainant, these were demurred to as insufficient by defendants, the demurrer was overruled, and the award was set aside as illegal, and a motion to make it the judgment of the court was of course denied.  The *pendente lite* exceptions of defendant are to these rulings of the court.

We do not see error in the rulings complained of.  The award seems conditional and uncertain.  It appears from it that a portion of the lots has not been in complainant's possession, and until possession is had there is to be a deduction of the rental. The arbitrators were to settle two points.  First, at what rate of ground-rent the leases of 51 and 52, Walton Ward, Savannah, made the 19th December, 1850, by Hiram Roberts to Benjamin Armstrong should have been renewed at their expiration on the 19th of December, 1871.  Second, what amount, if any, George P. Evans, administrator of Isabella Evans ought to pay up to the day of the award for ground-rent of said lots upon the rate to be fixed by the said arbitrators.

The award was that the lease of the whole of lots 51 and 52, Walton Ward, should have been renewed at their expiration, December 13th, 1871, to Mrs. Isabella Evans, the legal assignee of the previous leases at the rate of two hundred dollars per annum; that George P. Evans, administrator of Isabella Evans, will owe on the 19th of March, 1882, for ground rent of that portion of lots 51 and 52, in his possession and enjoyed by said estate the sum of $1,160.00, as will more fully appear by reference to a statement hereto appended and marked "A;" that until the said George P. Evans, administrator, etc., shall be put into complete and full possession and

enjoyment of the whole of said lots 51 and 52, an abatement of forty dollars per annum shall be allowed upon the yearly rental herein found, and continue so long as the case continues.

We think that the questions submitted are not definitely settled by the award. The estate of Mrs. Evans, or at least the administrator thereon, it seems, has not been in possession of all of these lots, and when he will be put in is undetermined. How much the annual rental is to be, is, therefore, undetermined for any year. The complainant may be put in possession in a month or not at all during the renewed leases. Nor is the rental of each lot fixed. The leases are separate. The values are different, as appears elsewhere in the record, and the award could not be decreed upon and enforced without difficulty. The counsel for defendants proposed in open court to adjust this uncertainty, and to accept such rental on each lot as might be agreeable; and they except to this proposition not being enforced over complainant's objection. The proposition serves to show the uncertainty of an award which had to be amended by agreement. What uncertainty is good reason in law to set the award aside. Code §2888. We see no error in the refusal of the court to force the other side to agree. Nor do we see any in the denial of the motion of the defendant to recommit the submission to the arbitrators. An arbitration begins in agreement of parties; and certainly if for any cause incapable of execution, it could not be continued without agreement. To recommit, is to continue it.

Besides, it has been ruled that it cannot be recommitted, but must be finally disposed of under our statute (Code, §1243) by the court. 63 *Ga.,* 752. It is true that this section has reference to arbitration under the Act of 1855-6, and the case in the 63 *Ga.,* 752 appears to have arisen on an arbitration under that act; but arbitration under order of court between parties litigant is by consent too and rest thereon; and the reason and spirit of the section and decision

in the 63d would seem to cover all arbitrations. Certainly the court was not compelled by law to recommit the matters in dispute to the arbitrators; and except by a renewal of the original consent, should not have done so. No evidence need be set forth with the exceptions where questions of pure law on the face of the award are considered and the award set aside on them. *47 Ga.*, 10.

In view of the whole case, we think that the ends of justice demand a trial *de novo.* If the defendant desires to try the case made in his answer on the arrears of rent, he has the right to do so, notwithstanding the dismissal of the bill and thereby the discontinuance of the main issues. If not, he may abide the bringing of the new case by complainant, and let one trial settle all.

Judgment reversed.